# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE, LACKAWAXEN and STOURBRIDGE RAILROAD COMPANY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STAR TRAK, INC., <br><br> Defendant. | CIVIL ACTION NO. 3:18-CV-0480 <br><br> (SAPORITO, M.J.) |

## MEMORANDUM

This diversity action is before the court on the motion to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 23). For the reasons set forth below, the defendant's motion will be granted in part and denied in part.

I. **BACKGROUND**

The plaintiffs are the operators and owners of a certain railway business car #97, known as the "*Wellsboro*," a passenger railcar which had been used by at least three presidents of the United States in its heyday ("Car #97"). The defendant is in the business of repairing, refurbishing, and restoring railway cars such as Car #97.

On a date not specified in the amended complaint, the parties

entered into an oral agreement in which the defendant agreed to "properly do extensive repair, restoration and refurbishment of said [C]ar #97 in exchange for payment." At some point prior to December 15, 2016,[1] the defendant commenced working on Car #97.

Car #97 was returned to the plaintiffs on May 19, 2017. After inspection and testing, the plaintiffs voiced numerous objections to the defendant with respect to the quality of workmanship or its failure to properly repair, restore, or refurbish various components or systems of Car #97. Over the next several months, the defendants appear to have "re-serviced" some of these defects in response to the plaintiffs' complaints, until it finally refused to perform any further repairs in December 2017. The plaintiffs allege that the defendants' faulty repair, restoration, and refurbishment work included "generator failure; heating failure; air conditioning failure; water rising compression failure; hot water system failure; and other defective work." These defects allegedly caused the plaintiffs "substantial down time and loss of use, loss of profit, general devaluation of the railcar, significant costs of correction, and loss of . . .

---

[1] On December 15, 2016, a representative of the defendant allegedly "toasted and celebrated" successful restoration of the car's heating system and generator.

employee time." The plaintiffs allege that they paid the defendant a total of $484,582.19 to the defendant in consideration for its services under their oral agreement, but the defective condition of Car #97 has cost them an additional $188,309.00 in repair and restoration expenses, lost income, and other damages.

Although it is not a model of clarity, the amended complaint appears to assert a single breach of contract claim against the defendant, based upon the defendant's alleged breach of an implied warranty that its work would be performed in a reasonably workmanlike manner, an implied warranty of fitness for an intended purpose, an implied warranty of merchantability and fitness for ordinary purposes, and an express term that the defendant would "properly" repair, restore, and refurbish Car #97.

The defendant has moved to dismiss the action in its entirety for failure to state a claim. The defendant contends that Pennsylvania law does not recognize implied warranties to perform services in a workmanlike manner or of fitness for an intended purpose outside the context of the sale of goods or the construction of a residential home. The defendant has not addressed the breach of express contract terms or the implied warranty of merchantability and fitness for ordinary purposes.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint

relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, ___ Fed. App'x ___, No. 17-2360, 2018 WL 4600668, at *2 n.3 (3d Cir. Sept. 25, 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III. DISCUSSION

The plaintiffs have brought a single claim for breach of contract against the defendant, based upon alternative legal theories with respect to the duty breached: (a) breach of an implied warranty of workmanlike performance; (b) breach of an implied warranty of fitness for an intended purpose; (c) breach of an implied warranty of merchantability and fitness for ordinary purposes; and (d) breach of an express contractual term that repair services would be "properly" done. "A party claiming breach of contract must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'" *Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880, 888 (Pa. Super. Ct. 2006).

At this stage, the parties do not dispute the existence of a contract or the damages alleged by the plaintiffs. The defendant has moved to dismiss

this action for failure to state a claim on the ground that the plaintiffs have failed to allege a breach of duty imposed by the contract because the implied warranties relied upon by the plaintiffs are not applicable outside of the sales and residential construction contexts.

## A. Warranty of Workmanlike Performance

The plaintiffs claim that their oral agreement with the defendant included an implied warranty of workmanlike performance,[2] which the defendant breached. The defendant argues that, under Pennsylvania law, the implied warranty of workmanlike performance is limited to residential construction contracts, and thus it does not apply to the instant contract for railcar repair services.

The defendant has conflated the warranty of workmanlike performance with the warranty of habitability, arguing that the plaintiffs' claim for breach of implied warranty of workmanlike performance should

---

[2] (Doc. 21 ¶ 10 ("As a matter of Law, every contract for work or services contains an implied duty to perform skillfully and in a workmanlike manner. Further, upon entering an [agreement] for services, the Defendant impliedly warranted that its work will be performed in a reasonably workmanlike manner.") (citations omitted)); *id.* ¶ 11 ("Defendant failed to provide proper and workmanlike repair and restoration . . . , and therefore, Defendant's performance violated good and workmanlike standards as required above.").

be dismissed because Pennsylvania courts have not extended the warranty of habitability beyond the context of residential construction contracts. But the two warranties are not the same. *See Conway v. Cutler Grp., Inc.*, 57 A.3d 155, 160 (Pa. Super. Ct. 2012) ("Our Supreme Court has recognized that these two warranties are not the same."), *rev'd on other grounds*, 99 A.3d 67 (Pa. 2014); *see also Bednarski v. Hideout Homes & Realty Inc.*, 711 F. Supp. 823, 827 (M.D. Pa. 1989) (characterizing these as separate implied warranties).[3] The warranty of habitability case law cited by the defendant is simply inapposite to the question of whether the oral contract for railcar repair, restoration, and refurbishment services at issue here included an implied warranty of workmanlike performance.

Although contract disputes with similar factual circumstances may not be common, Pennsylvania federal and state courts have previously

---

[3] The implied warranty of habitability is a species of warranty of fitness for an intended purpose, with the particular purpose intended being habitation. *See City of Philadelphia v. Page*, 363 F. Supp. 148, 151 (E.D. Pa. 1973) ("The Supreme Court has long held that the law will imply a warranty of fitness for the purpose intended when a buyer has reason to rely on, and does rely on, the judgment of the seller who produces the product, especially as to latent defects. The application of this principle in the field of housing has resulted in the declaration of an implied warranty of habitability to exist between a builder-vendor of a new home and the purchaser thereof.") (citation omitted) (applying Pennsylvania law).

recognized on several occasions that all service contracts—not just residential construction contracts—may include an implied warranty that services will be performed in a reasonable and workmanlike manner. *See Huling v. Henderson*, 29 A. 276, 278 (Pa. 1894) ("One who undertakes any work impliedly assumes that he will do it with ordinary skill and care, and becomes liable to make compensation for not doing so.") (tree trimming services); *see also Maryland Cas. Co. v. Preferred Fire Prot., Inc.*, No. 2:14cv245, 2014 WL 4218715, at *6–*7 (W.D. Pa. Aug. 25, 2014) (recognizing implied duty to perform services in a workmanlike manner under fire sprinkler system inspection, repair, and maintenance contract); *Goldstein v. United Lift Serv. Co., Inc.*, Civil Action No. 09-826, 2010 WL 4236932, at *3 (E.D. Pa. Oct. 25, 2010) (recognizing implied duty to perform work with ordinary skill and care under chairlift maintenance contract); *Contemporary Packaging Corp. v. Seal-Tite Bag Co.*, Civ. A. No. 86-1577, 1986 WL 7838 (E.D. Pa. July 10, 1986) (recognizing implied warranty to perform manufacturing services in a reasonable and workmanlike manner); *Ferguson v. Burge*, 166 A.2d 288, 290 (Pa. Super. Ct. 1960) (recognizing duty to perform services in workmanlike manner

under contract for installation of a well);[4] *Diggs v. Susquehanna Ctr. for Nursing & Rehab.*, 35 Pa. D. & C.4th 373, 381 (Dauphin Cty. (Pa.) C.C.P. 1996) (recognizing implied warranty of skilled and workmanlike performance in a physician's provision of medical services); *Metro. Edison Co. v. United Eng'rs & Constructors, Inc.*, 4 Pa. D. & C.3d 473, 482–83 (Philadelphia Cty. (Pa.) C.C.P. 1977) (recognizing implied warranty that work will be performed in a reasonably workmanlike manner under a *non-residential* construction contract).

Here, Star Trak—the party with superior knowledge—held itself out as competent to repair, restore, and refurbish the plaintiffs' railcar. *See Goldstein*, 2010 WL 4236932, at *3. The parties orally contracted for the defendant to perform these services with respect to Car #97. Implied in the contract was that the services would be performed by the defendant in a reasonably workmanlike manner. *See Maryland Cas. Co.*, 2014 WL

---

[4] We note that the defendant has cited this case for the opposite proposition. But while *Ferguson* declined to recognize an implied warranty of fitness for an intended purpose in a well-drilling services contract—because neither party had superior knowledge of whether the well would be productive—the court expressly recognized the existence of an implied warranty to perform services in a workmanlike manner and upheld a jury's determination that the property owner failed to establish a breach of this implied warranty. *See Ferguson*, 166 A.2d at 290.

4218715, at *6–*7; *Goldstein*, 2010 WL 4236932, at *3; *Contemporary Packaging Corp.*, 1986 WL 7838; *Huling*, 29 A. at 278; *Ferguson*, 166 A.2d at 290; *Diggs*, 35 Pa. D. & C.4th at 381; *Metro. Edison Co.*, 4 Pa. D. & C.3d at 482–83. The plaintiffs allege that Star Trak failed to perform its work in a reasonably workmanlike manner, resulting in a multitude of defects, which in turn caused the plaintiffs to incur further expense to correct these deficiencies and caused a loss of income when Car #97 was unexpectedly forced out of service.

Accordingly, taking all of the allegations in the complaint as true and drawing all inferences in the plaintiffs' favor, as we must, we find that the amended complaint states a claim for breach of contract based upon the defendant's failure to provide repair, restoration, and refurbishment services in a reasonable and workmanlike manner.

### B. Warranties of Fitness for an Intended Purpose and of Merchantability and Fitness for Ordinary Purposes

The plaintiffs claim that their oral agreement with the defendant included an implied warranty of fitness for an intended purpose and an implied warranty of merchantability and fitness for ordinary purposes,

both of which the defendant breached.[5] The defendant argues that, under Pennsylvania law, the implied warranty of fitness for an intended purpose is limited to contracts for the sale of goods, which are governed by the Uniform Commercial Code ("U.C.C."), 13 Pa. Cons. Stat. Ann. § 2315, and thus it does not apply to the instant contract for railcar repair *services*.[6]

But "the implied warranty of fitness for [an intended] purpose is not an invention of the U.C.C. . . . . Rather, it is an outgrowth of the common sense and common law recognition that such a warranty may be implied under certain circumstances. Whether or not the U.C.C. applies is not decisive." *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 453 F. Supp. 527, 538 (W.D. Pa. 1978), *rev'd in part on other grounds*, 626 F.2d 280 (3d Cir. 1980).

> To say that a warranty is implied in a sale is not to say that none is implied if there is no sale. Implied warranties of the quality of goods are today firmly entrenched in sales law and their growth has been paralleled by that of similar warranties where goods have been supplied under conditions not amounting to a

---

[5] (Doc. 21 ¶ 10 (referencing "implied warranty of fitness for an intended purpose"); *id.* ¶ 11 ("Defendant failed . . . to make the railroad car fit for its normal use . . . .")).

[6] The defendant has not addressed the plaintiffs' allegation that it breached an implied warranty of merchantability and fitness for ordinary purposes.

> sale. . . . Where a statute purports principally to remold the common law in a limited area to produce uniformity, there is less basis for argument that the express provisions with regard to that area imply contrary rules in other areas, and more reason to regard the act as one would the common law which it replaced.

*Wivagg v. Duquesne Light Co.*, 73 Pa. D. & C.2d 694, 699 (Allegheny Cty. (Pa.) C.C.P. 1975) (quoting another source).

Thus, Pennsylvania federal and state courts have recognized that service contracts—not just contracts for the sale of goods—may include implied warranties of fitness for an intended purpose or of merchantability and fitness for ordinary purposes. *See Hoffman v. Misericordia Hosp. of Philadelphia*, 267 A.2d 867, 870–71 (Pa. 1970) (recognizing that adoption of the U.C.C. "did not impede the parallel development of warranties in non-sale situations" and reversing dismissal of claims for breach of implied warranties of merchantability and of fitness for a particular purpose with respect to medical services); *see also Nova Fin. Holdings Inc. v. Bancinsure, Inc.*, Civil Action No. 11-07840, 2012 WL 1322932, at *5–*6 (E.D. Pa. Apr. 17, 2012) (finding common law implied warranties of fitness for a particular purpose and of merchantability may apply to insurance contracts); *Stonhard v. Advanced Glassfiber Yarns, Inc.*, No. CONTROL 100380, 2001 WL 1807359, at *2–*3 (Philadelphia Cty. (Pa.) C.C.P. Nov.

21, 2001) (finding implied warranties may apply to contract for flooring installation services); *Wivagg*, 73 Pa. D. & C.2d at 697–700 (finding implied warranties of fitness may apply to non-sales contracts, such as a contract to provide electrical power service). Thus, we find the defendant's categorical argument against the plaintiffs' warranty of fitness claims unpersuasive.

Turning to the substance of these claims, we note that:

> An implied warranty of fitness for a particular purpose is a warranty found within the law, though not explicitly stated, that the item is suitable for certain special purposes. It requires that the seller had reason to know of the buyer's particular purpose at the time of entering the contract and that the buyer was relying on the seller's expertise. An implied warranty of merchantability guarantees that the item sold is fit for ordinary purposes.

*Nova Fin. Holdings*, 2012 WL 1322932, at *5 (citing *Black's Law Dictionary* 14c (4th ed. 2009) and *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992)) (citations omitted).

Here, we find that, although the amended complaint references "an implied warranty of fitness for an intended purpose" in connection with its implied warranty of workmanlike performance discussion, it has failed to allege any facts to support a claim of breach of an implied warranty of

fitness for a particular purpose. The plaintiffs have failed to allege any special purpose—beyond "normal use"—for which the defendant's services were contracted, nor have they alleged the defendant's knowledge of that special purpose or their own reliance on the defendant's expertise to select and furnish items appropriate to meet that unarticulated special purpose. But we find that the amended complaint has alleged facts sufficient to make out a plausible claim that Star Trak breached an implied warranty of merchantability and fitness for ordinary purposes. The amended complaint alleges the failure of multiple components and systems upon which the defendant performed its repair, restoration, and refurbishment services, as well as the defendant's failure to actually perform some of the services for which it billed the plaintiffs.

Accordingly, taking all allegations in the complaint as true and drawing all inferences in the plaintiffs' favor, as we must, we find that the amended complaint states a claim for breach of an implied warranty of merchantability and fitness for ordinary purposes. But we further find that the amended complaint has failed to state a claim for breach of an implied warranty of fitness for an intended purpose.

**C. Breach of Express Terms of the Contract**

The amended complaint provides little detail with respect to the terms of the oral contract between the parties, but it does allege that the parties agreed that the defendant was to "properly do extensive repair, restoration and refurbishment of said [C]ar #97 in exchange for payment." In addition to the implied terms or warranties addressed above, we find that the amended complaint plausibly alleges that the defendant breached an express term of the oral agreement that the defendant would "properly" repair, restore, and refurbish Car #97. The defendant has not addressed this particular theory of recovery in its motion to dismiss.

**IV. CONCLUSION**

For the foregoing reasons, the defendant's motion to dismiss (Doc. 23) shall be granted in part and denied in part. The plaintiffs' claim for breach of an implied warranty of fitness for an intended purpose shall be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiffs' contract claim based upon the defendant's alleged breach of an implied warranty of workmanlike performance, an implied warranty of merchantability and fitness for ordinary purposes, and an express term

that the defendant would "properly" repair, restore, and refurbish Car #97, shall proceed. The plaintiffs will be granted leave to file a second amended complaint within 14 days.

An appropriate Order follows.


Dated: October 25, 2018 *<u>Joseph F. Saporito, Jr.</u>*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge